# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

IN RE:

BRIAN LEE HUNT and STACI
ALLISON HUNT,

Case No. 25-10836
Chapter 7

*Debtors*.

## REPLY OF EQUITY BANK AND MORRIS LAING LAW FIRM TO MOVANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR CONTEMPT FOR VIOLATION OF DISCHARGE INJUNCTION

COME NOW Equity Bank ("Equity") and Morris, Laing, Evans, Brock & Kennedy, Chartered, d/b/a Morris Laing Law Firm ("ML"), Equity's attorneys, and file this Reply to Movants' Supplemental Brief in Support of the Motion For Contempt filed July 27, 2026 (Doc# 81) ("Debtors' Brief").

<u>Introduction</u>

As Debtors Brian Lee Hunt and Staci Allison Hunt assert in Debtors' Brief, the sole issue before this Court is whether post-discharge letters from Equity and ML to Debtors concerning their discharged debt violate the discharge injunction of Section 524(a)(2) of the Bankruptcy Code. Debtors assert that the letters violate the discharge injunction. Equity and ML assert that they do not. The issue is before this Court on Debtors' Motion For Contempt For Violation of Discharge Injunction (Doc #43) (the "Motion").

As a preliminary matter, Equity and ML note that Debtors withdrew the motion for an accounting that was part of the Motion, without conceding that Equity's statements concerning the amount owed are correct. Nonetheless, Debtors' Brief discusses alleged

errors and inconsistencies in Equity's and ML's communications regarding amounts owed. Because the demand for an accounting was withdrawn by Debtors, and determination of the amount owed is not before this Court, this Reply does not address those portions of Debtors' Brief.

Statement of Facts

The facts pertinent to the issue before the Court are not contested, and are as follows:

1. Debtors were indebted to Equity under a Promissory Note, which was secured by a mortgage on Debtors' residence.

2. Debtors did not reaffirm the debt to Equity in their bankruptcy case, and obtained a discharge on December 30, 2025.

3. Equity and ML mailed the following letters to Debtors subsequent to the entry of discharge. The entire body of such letters are set forth herein. The italics are added for emphasis and are not in the original; the bold is in the original letters.

a. ML letter dated January 28, 2026 (Exhibit B to the Motion):

> Our firm represents Equity Bank. Equity has informed us that the referenced loan, *on which you have discharged your personal liability in a Chapter 7 bankruptcy*, has a delinquent balance in the amount of $9,637.89, which includes a partial payment due November 1, 2025 in the amount of $1,671.91, the payments due December 1, 2025 and January 1, 2026 in the amount of $3,888.49 each, plus late charges in the amount of $109.48, less an overpayment in the amount of $79.52, under Promissory Note dated July 7, 2023, in the original principal amount of $360,000. The unpaid principal balance under the Note is $351,365.79, with accrued and unpaid interest of $3,842.34 and late charges of $109.48 as of January 28, 2026. Interest continues to accrue in the amount of $61.001 per day from January 28, 2026 until paid. In addition, the Bank has incurred attorneys' fees in the amount of $667.50 on this matter through the date of this letter.

2

Unless you notify us within thirty (30) days after receipt of this notice that you dispute the validity of the debt or any portion thereof, *we will assume that the debt is valid as an in rem claim against the property securing the debt.* If you notify us within thirty (30) days of receipt of this notice that the debt or any portion of the debt is disputed, we will obtain verification of the debt and mail a copy of such verification to you. If you request of us **in writing** within thirty (30) days of receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

In order to cure the default under the Note, you must pay to Equity Bank the amount of $10,305.39, which includes the delinquency set forth above, plus $667.50 in attorneys' fees incurred by the Bank on this matter. This amount must be paid to Equity Bank by February 27, 2026. In addition, the payment due February 1, 2026 in the amount of $3,888.49 must be timely made.

Failure to timely cure the default may result in acceleration of the sums owed under the Note, foreclosure of the mortgage on the property located at 1511 Bitner Court, Pittsburg, Kansas, by judicial proceedings, and the sale of the mortgaged property. Under the mortgage, you have a right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense you have to acceleration and foreclosure.

**This letter is an attempt to collect an in rem debt against the mortgaged property, and any information obtained will be used for that purpose. Equity Bank recognizes that you have discharged your personal liability for the debt, and is not attempting to collect the debt from you. The purpose of this letter is to advise you what is required in order to avoid foreclosure of the Bank's mortgage.**

b. ML letter dated February 5, 2026 (Exhibit C to the Motion):

My assistant returned your call to your office yesterday. In the call, you advised that my letter of January 28 was incorrect, and that you are current on your payments to Equity Bank. Although you did make a payment after the date of my letter, according to the Bank's records you are still due for the December 1, January 1, and February 1 payments.

Enclosed please find the following:

- Loan Inquiry consisting of an account history.
- Payment ledger showing all payments made and application of same.
  - o The last four pages are additional columns to those shown on the first four pages, and show application of each payment.

3

- The color-coding shows payments made just under 30 days past due (yellow), payments made between 30-60 days past due (orange), and payments made more than 60 days past due (red).
- Escrow Statement as of December 31, 2025.

If you have evidence of payments made that are not accounted for in the information enclosed, please furnish evidence of such additional payments, including amounts and dates made.

Based on the manner in which you spoke to my assistant in your telephone call, we will not accept calls from you, and any communication with my office must be in writing.
[Following notice inserted after signature]

**This is an attempt to collect an in rem debt against the mortgaged property, and any information obtained will be used for that purpose. Equity Bank recognizes that you have discharged your personal liability for the debt, and is not attempting to collect the debt from you. The purpose of this letter is to furnish you additional information concerning the default in payments on the loan.**

c. ML letter dated February 19, 2026 (Exhibit D to the Motion):

On January 28, 2026, I sent you a Notice of Default on the referenced loan. You called m office on February 4, advising that you dispute the information set forth in the letter, specifically the statement that payments were delinquent. On February 5, I mailed you copies of all of the pertinent information showing payment history, and manner that payments were applied, as well as an escrow statement, and requested that you furnish evidence of the payments you do not believe were accounted for in the information furnished.

I have now received a second notice of dispute from you, in the form of your letter dated February 14, which was received today. As the verification of the debt has already been furnished, there is no more information to furnish in response to your February 14 letter. I note that you did not furnish any evidence in support of your assertion that the payments are not in default, or that you do not owe the indebtedness described in my letters and information furnished to you.

You indicated you are submitting a Qualified Written Request to Equity Bank. I am sure Equity's compliance department will determine what response might be required to the QWR.

[Following notice inserted after signature]

4

**This is an attempt to collect an in rem debt against the mortgaged property, and any information obtained will be used for that purpose. Equity Bank recognizes that you have discharged your personal liability for the debt, and is not attempting to collect the debt from you. The purpose of this letter is to furnish you additional information concerning the default in payments on the loan.**

d.   ML letter dated February 24, 2026 (Exhibit E to Motion):

As you note in your February 19, 2026 letter, the total cure set forth in my letter of January 28, 2026 was incorrect, as I inadvertently added the overpayment amount of $79.52 instead of subtracting it, resulting in overstatement of the cure amount by $159.04.    The reinstatement amount of $9,478.85 was the correct cure amount as of January 28.

[Following notice inserted after signature]

**This is an attempt to collect an in rem debt against the mortgaged property, and any information obtained will be used for that purpose. Equity Bank recognizes that you have discharged your personal liability for the debt, and is not attempting to collect the debt from you. The purpose of this letter is to furnish you additional information concerning the default in payments on the loan.**

e.   Equity Notice of Escrow Deficiency dated May 19, 2026 (Exhibit O to Motion):

This letter is to notify you that an escrow deficiency exists on the above-referenced loan secured by the property listed above.

As of the date of this letter, the total escrow deficiency is $ 3,821.76.

**DEMAND FOR CURE**

You are hereby notified that the escrow deficiency must be brought current by payment in the amount listed above within fifteen (15) days from the date of this letter.

Deadline to cure:  6/4/2026

Payment should be remitted to Equity Bank at the address listed above or as otherwise directed.

**FAILURE TO CURE – FORECLOSURE ACTION**

5

If the escrow deficiency is not cured within the time stated above, Equity Bank will proceed with foreclosure of its mortgage lien against the property.

**IMPORTANT BANKRUPTCY NOTICE**

This communication is not an attempt to collect a debt from you personally.

If you have received a discharge in a Chapter 7 bankruptcy case and did not reaffirm the debt, you have no personal obligation to repay the debt Equity Bank is not seeking to impose personal liability.

This notice is provided solely for the purpose of enforcing the Bank's lien against the property. Any payment you choose to make is voluntary and for the purpose of retaining the property.

You may wish to consult with a legal professional regarding your rights and obligations.

<u>Argument and Authorities</u>

Debtors rely on two cases for their position that ML's and Equity's post-discharge communications violate the stay injunction of Section 524(a)(2) of the Bankruptcy Code. The first is *Walker v. Wilde (In re: Walker)*, 927 F.2d 1138 (10th Cir. 1991). *Walker* has no bearing on the issue before this Court. In that case, the creditors sought to continue their action against debtors "for the sole purpose of confirming their right to the [Utah Real Estate Recovery] Fund monies previously paid to them." 927 F.2d at 1144. The case did not concern post-discharge communications or demands for payments.

The second case is *Paul v. Iglehart (In re: Paul)*, 534 F.3d 1303 (10th Cir. 2008). This case does concern post-discharge communications, but the decision does not support Debtor's position in this case. In *Paul*, after entry of discharge, Iglehart sent notices of

6

depositions to the debtors in a state court action that was proceeding against a third party, with debtors as nominal defendants. The deposition notice stated that the "discovery efforts could not involve the Pauls' own discharged pre-petition liabilities." 534 F.3d at 1305. In reversing the decisions of the Bankruptcy Court and the District Court sanctioning Iglehart, the Tenth Circuit noted that "a bankruptcy court may sanction a party for violating the discharge injunction only if the *party took some action prohibited by § 524(a)(2)*—i.e., an action 'to collect, recover or offset any [discharged] debt . . . of the debtor." 534 F.3d at 1307 (emphasis in original).

In Debtors' Brief, Debtors accurately state the "objective-coercion principle" established by the Tenth Circuit in *Paul*; however, they misapply the principle. In order for a creditor to be found to have violated the discharge injunction, the debtor must prove that "'the creditor acted in such a way as to "coerce" or "harass" the debtor improperly' so as to obtain payment of the discharged debt." 534 F.3d at 1308 (citing *Pratt v. General Motors Acceptance Corp. (In re: Pratt)*,462 F.3d 14, 19 (1st Cir. 2006). The court noted that the "inquiry is objective; the question is whether the creditor's conduct had the practical, concrete effect of coercing payment of a discharged debt." *Id.* To constitute a violation, the creditor's act must be "'one to collect a discharged debt *in personam*.'" (quoting *In re: Schlichtmann*, 375 B.R. 41, 97 (Bankr. D. Mass. 2007).

In *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), the United States Supreme Court considered the circumstances under which a court may hold a creditor in contempt for

violation of the discharge injunction, and held that to hold the creditor in contempt "if there is *no fair ground of doubt* as to whether the [discharge injunction] barred the creditor's conduct." *Id.* at 1799 (emphasis in original). Contempt may be appropriate "if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id.*

As noted by Equity and ML in an earlier pleading, the leading case concerning whether post-discharge communications containing a "Collection Disclaimer" (sometimes referred to as a "Bankruptcy Disclaimer") similar to those in the instant case violate the post-discharge injunction appears to be *Kirby v. 21st Mortgage Corporation (In re: Kirby)*, 599 B.R. 427 (1st Cir. BAP 2019). In that case, the BAP set forth the following principles in considering the issue:

> "'The burden of proof is on the former debtor to establish by clear and convincing evidence that [the] creditor violated the post-discharge injunction.'" *Id. at 440* (quoting *Rosado v. Banco Popular de P/R. (In re: Rosado)*, 561 B.R. 598, 605 (1st Cir. BAP 2017).

> The courts should apply an objective standard, and "the debtor's subjective feeling of coercion or harassment is not enough." *Id. at 440.*

> The discharge injunction does not prohibit every communication between a creditor and debtor, but "'only those designed to collect, recover or offset any [discharged] debt as a personal liability of debtor.'" *Id at 440* (quoting *Best v. Nationstar Mortgage LLC (In re: Best)*, 540 B.R. 1, 9 (1st Cir. BAP 2015).

> Communications with Collection Disclaimers that expressly acknowledge the debtor's bankruptcy discharge, state that they are not attempts to collect the debt, and state that they are sent for informational purposes do not violate the discharge injunction. *Id. at 441, n. 18* (citing *Navarro v. Banco Popular de P.R. (In re: Navarro)*, 563 B.R. 127, 146-47 (Bankr. D.P.R. 2017).

8

At the initial hearing on the Motion, this Court noted that the bankruptcy courts have found that creditors' post-discharge communications containing a "Collection Disclaimer" do not violate the discharge injunction, and advised Debtors that in order to prevail, they would need to furnish the Court with case authority supporting their claim that ML's and Equity's communications violated the discharge injunction notwithstanding the inclusion of the Collection Disclaimers quoted in the Statement of Facts above.   It is instructive that Debtors have not cited a single case in support of their position.

The *Kirby* court noted that a Collection Disclaimer will not insulate a creditor from liability for violation of the discharge injunction *when there is evidence of creditor coercion or harassment*.   599 B.R. at 441.   However, the court concluded that "the plain language of the Right to Cure Notice demonstrates that it was an act to enforce 21st Mortgage's foreclosure rights rather than an attempt to collect a debt as a personal liability."   599 B.R. at 447.   Because the Notice contained an unambiguous bankruptcy disclaimer, it was a permissible communication by a secured creditor to enforce its in rem rights.   *Id.*

The creditor in *Kirby* had sent nineteen written communications to Debtors after the entry of the discharge order.   Each communication contained the following:

> **NOTICE.**   Please be advised further that this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received discharge of such debt in accordance with

9

applicable bankruptcy laws . . . . This letter is being sent to any such parties merely to comply with applicable state law governing foreclosure of liens . . . .

*Id.* at 432.

The Bankruptcy Disclaimers in the case before this Court were more explicit than the above notice in recognizing and acknowledging Debtors' bankruptcy discharge, and in disclaiming any intention to impose personal liability on the Debtors. While Debtors' attempt to characterize the communications as demands for payment, the only communication that used the word "demand" was the Equity statement of escrow account dated February 24, 2026, and it used the word in a heading. By virtue of the language that followed, including the Bankruptcy Disclaimer, it is apparent from the face of the communication that Equity was not seeking to impose personal liability on Debtors. It is also worth noting that three of the four communications from ML to Debtors were in direct response to communications from Debtors.

To summarize, all of ML's and Equity's communications at issue in this case expressly recognized Debtors' discharge and disclaimed any attempt to impose personal liability on the Debtors. Under the objective-coercion principal established by the *Paul* court, ML's and Equity's conduct did not have the practical, concrete effect of coercing payment of a discharged debt, and there is certainly a fair ground of doubt whether ML's and Equity's conduct violated the discharge injunction under the *Taggart v. Lorenzo* standard. As established by the First Circuit BAP in *Kirby*, communications with Collection Disclaimers that specifically acknowledge the debtor's bankruptcy discharge,

state that they are not attempts to collect the debt, and state that they are sent for informational purposes do not violate the discharge injunction. 599 B.R. at 441, n. 18 (citing *Navarro v. Banco Popular de P.R. (In re: Navarro)*, 563 B.R. 127, 146-47 (Bankr. D.P.R. 2017)). Debtors simply have not met the burden of proof to establish that Equity and ML violated the discharge injunction.

Conclusion

Debtors' Motion should be denied, and the Court should enter an order finding that Equity's and ML's communications with Debtors did not violate the injunction discharge of Section 524(a)(2) of the Bankruptcy Code.

Respectfully submitted,

/s/ Karl R. Swartz
Karl R. Swartz, #12532
Morris Laing Law Firm
300 N. Mead, Suite 200
Wichita, KS 67202
(316) 262-2671
kswartz@morrislaing.com
*Attorneys for Equity Bank*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2026, I electronically filed the foregoing pleading with the Clerk of the Bankruptcy Court by using the CM/ECF system which will send a notice of electronic filing to all parties requesting electronic notice, and on the same date I mailed a copy to:

11

Brian Lee Hunt
Stacie Allison Hunt
1511 Bitner Court
Pittsburg, KS 66762

/s/ Karl R. Swartz
Karl R. Swartz

12