**SO ORDERED.**

**SIGNED this 14th day of October, 2026.**

Mitchell L. Herren
Chief United States Bankruptcy Judge

*Designated for online publication*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **IN RE:**<br><br>**Brian Lee Hunt**<br>**Staci Allison Hunt,**<br><br>**Debtors.** | **Case No. 25-10836**<br>**Chapter 7** |

**<u>Memorandum and Order Denying Debtors' Motion for Contempt for Violation of Discharge Injunction (Doc. 43)</u>**

Debtors Brian and Staci Hunt filed a pro se Chapter 7 case and did not reaffirm the debt secured by a mortgage on their real property. A discharge order was entered, and as a result, Debtors discharged their personal liability on that secured loan. Post-discharge, a law firm for the secured creditor sent Debtors a letter asserting a notice of default on that loan and informing Debtors the amount they must pay to avoid a state court foreclosure action on the debt. The letter

included a bolded statement recognizing the discharge of Debtors' personal liability and noting the secured creditor sought only *in rem* relief. However, Debtors interpreted the letter (and subsequent communications) as a personal demand on them to pay the amount due, in violation of the discharge injunction of 11 U.S.C. § 524(a)(2).[1] Debtors filed a motion seeking a contempt finding against the secured creditor, and the Court heard evidence on the question of whether a violation of the discharge injunction had occurred.

The Court concludes there was not a violation of § 524(a)(2). The communications, when viewed objectively, were not a coercive or harassing attempt to collect a personal obligation that had been discharged. Debtors' motion[2] is denied.

## I. Findings of Fact

On July 7, 2023, Debtors signed a promissory note with Equity Bank for a $360,000 loan, secured by a mortgage on 1511 Bitner Court, in Pittsburg, Kansas (the Real Property).[3] The Real Property is Debtors' personal residence.

Debtors filed a pro se Chapter 7 bankruptcy petition on August 8, 2025. In their Schedule A supporting that petition, Debtors listed the Real Property with a current value of $450,000.[4] Debtors then claimed the Real Property as their exempt

---

[1] All future references to "Bankruptcy Code," "Code," or "§," refer to Title 11 of the United States Code.

[2] Doc. 43. Debtors appear pro se. Equity Bank appears by Karl Swartz of Morris Laing Law Firm.

[3] Proof of Claim No. 1, Ex. 1. The Court makes no finding as to the validity of the loan or mortgage.

[4] Doc. 2 p. 10. Debtors filed amended Schedules on August 13, 2025, Doc. 15, but did not amend the information pertinent here.

homestead on their Schedule C.[5] On Debtors' Schedule D, Debtors listed Equity Bank as having a secured claim on the Real Property and stated the amount of the claim as $351,748.30.[6] Debtors' Statement of Intention indicated Debtors intent to retain the property and "continue making payments."[7] Debtors did not enter into a reaffirmation agreement for the debt on the Real Property.

Shortly after the Chapter 7 case was filed, on September 12, 2025, Equity Bank filed Proof of Claim No. 1 in Debtors' bankruptcy case. The Proof of Claim asserted a fully secured claim of $353,846.24. The line for "Amount necessary to cure any default as of the date of the petition" was left blank.[8] In an attachment to the Proof of Claim, Equity Bank listed a current balance of $351,365.79, interest due of $2370.97, and charges/fees of $109.48, for the total of $353,846.24.[9] The attachment also listed "daily interest" of $61.0010.[10]

On December 30, 2025, Debtors received a discharge in their Chapter 7 case.[11] The standard Order of Discharge notes Creditors cannot collect personal debts, but that a creditor with a lien may enforce its claim against property subject

---

[5] Doc. 2 p. 20. Again, Debtors filed an amended Schedule C on August 13, 2025, Doc. 18, but did not amend the information pertinent here.

[6] Doc. 2 p. 22.

[7] *Id.* p. 56.

[8] Proof of Claim No. 1 p. 2.

[9] *Id.* Ex 1 p. 24.

[10] *Id.*

[11] Doc. 38.

to that lien. It also reiterates that the discharge removes a debtor's personal liability for prepetition debts.

About a month later the Morris Laing law firm sent a letter addressed to Debtors individually, with the subject line: "Equity Bank Loan No. ****8025 Notice of Default."[12] The letter begins by noting the law firm represents Equity Bank, and then states:

> Equity [Bank] has informed us that the referenced loan, on which you have discharged your personal liability in a Chapter 7 bankruptcy, has a delinquent balance in the amount of $9,637.89 . . . plus late charges in the amount of $109.48, less an overpayment in the amount of $79.52, under Promissory Note date July 7, 2023, in the original principal amount of $360,000. The unpaid principal balance under the note is $351,365.79, with accrued and unpaid interest of $3,842.34 and late charges of $109.48 per day from January 28, 2026 until paid. In addition, the Bank has incurred attorneys' fees in the amount of $667.50 on this matter through the date of this letter.
>
> Unless you notify us within thirty (30) days after receipt of this notice that you dispute the validity of the debt or any portion thereof, we will assume that the debt is valid as an in rem claim against the property securing the debt. . . .
>
> In order to cure the default under the Note, you must pay to Equity Bank the amount of $10,305.39, which includes the delinquency set forth above, plus $667.50 in attorneys' fees incurred by the Bank on this matter. This amount must be paid to Equity Bank by February 27, 2026. In addition, the payment due February 1, 2026, in the amount of $3,888.49 must be timely made.
>
> Failure to timely cure the default may result in acceleration of the sums owed under the note, foreclosure of the mortgage on the property . . ., and the sale of the mortgaged property.[13]

The letter then ends with a bolded statement: **"This letter is an attempt to collect an in rem debt against the mortgaged property. . . . Equity Bank**

---

[12] Debtors' Ex. 1 p. 2 (bold emphasis removed).

[13] *Id.* p. 2-3.

**recognizes that you have discharged your personal liability for the debt, and is not attempting to collect the debt from you. The purpose of this letter is to advise you what is required in order to avoid foreclosure of the Bank's mortgage."**[14]

About a week after the first communication from Morris Laing, on February 5, 2026, the law firm sent a second letter to Debtors, in response to a phone call to the law firm from Debtors. The letter notes the phone call, a recent payment, and provides a loan history with account history, a payment ledger, and an escrow statement as of December 31, 2025.[15] Again, the letter ends with the same bolded statement included in the first letter, noting the letter is an attempt to collect an *in rem* debt against the mortgaged property, recognizing the discharge of personal liability, and disclaiming any attempt to collect the debt from Debtors personally.[16]

At this point, Mr. Hunt began sorting through the information provided by Morris Laing. Mr. Hunt called many attorneys to see if he and Ms. Hunt could find legal assistance concerning the dispute but could find no counsel willing to assist them. Mr. Hunt testified that he then withdrew money from his retirement account and Debtors did everything they could to make up the delinquency.

On February 19, 2026, the Morris Laing law firm sent a third letter to Debtors, this time in response to a February 14 letter from Debtors to the law firm,

---

[14] *Id.* p. 3.

[15] Debtors' Ex. 2 p 2. Mr. Hunt acknowledged his phone call to Morris Laing, and indicated he had first called Equity Bank directly, who referred him to the law firm.

[16] *Id.* p. 3.

characterized by the law firm as a "notice of dispute."[17] This letter from the law firm indicates there was no further information for the law firm to furnish, and again ends with the same bolded statement included in the first and second letters, noting the letter is an attempt to collect an *in rem* debt against the mortgaged property, recognizing the previous discharge of personal liability, and disclaiming any attempt to collect the debt from Debtors personally.[18]

On February 24, 2026, the Morris Laing law firm sent a fourth letter to Debtors, this time in response to a February 19 letter from Debtors to the law firm.[19] The law firm's February 24 letter states it agrees with a February 19 letter from Debtors that the total cure set forth in the first letter was incorrect, as it "inadvertently added the overpayment amount of $79.52 instead of subtracting it, resulting in overstatement of the cure amount by $159.04."[20] The law firm's February 24 letter then states the "correct" cure amount of $9,478.85 as of January 28.[21] Again, this fourth letter from the law firm ends with the same bolded

---

[17] Debtors' Ex. 3 p. 2.

[18] *Id.* The February 14, 2026, letter from Debtors to the law firm is Debtors' Exhibit 8, and it states that Debtors "dispute the claimed delinquency in its entirety," Debtors "do not owe the amount stated," and requests "written verification of the debt." Debtors' Ex. 8 p. 2.

[19] Debtors' letter to the law firm is a "written dispute of debt," disputing the validity of the debt and the amount claimed to be owed. Debtors' Ex. 10 p. 2. Debtors also sent a letter to Equity Bank at approximately the same time, identifying alleged errors in the loan account and requesting information on the account. Debtors' Ex. 9. Debtors also sent Equity Bank a "Notice of Error" letter on February 23, 2026. Debtors' Ex. 11.

[20] Debtors' Ex. 4 p. 2.

[21] Debtors dispute they are delinquent on their loan. The Court does not address the accounting of the loan in question and makes no findings as to the loan balance or delinquency.

statement included in the first, second, and third letters, noting the letter is an attempt to collect an *in rem* debt against the mortgaged property, recognizing the discharge of personal liability, and disclaiming any attempt to collect the debt from Debtors personally.[22]

Several months then passed. Equity Bank then sent a letter to Debtors regarding "Notice of Escrow Deficiency and Demand to Cure."[23] The letter, like the prior letters from the law firm, was addressed to Debtors individually, and notifies Debtors of a total escrow deficiency on the loan of $3,821.76. The Notice then states:

> **DEMAND FOR CURE**
>
> You are hereby notified that the escrow deficiency must be brought current by payment in the amount listed above within fifteen (15) days from the date of this letter.
>
> . . .
>
> **FAILURE TO CURE – FORECLOSURE ACTION**
>
> If the escrow deficiency is not cured within the time stated above, Equity Bank will proceed with foreclosure of its mortgage lien against the property.
>
> **IMPORTANT BANKRUTPCY NOTICE**
>
> This communication is not an attempt to collect a debt from you personally.
>
> If you have received a discharge in a Chapter 7 bankruptcy case and did not reaffirm the debt, you have no persona[l] obligation to repay the debt. Equity Bank is not seeking to impose personal liability.

---

[22] *Id.*

[23] Debtors' Ex. 5 p. 2.

> This notice is provided solely for the purpose of enforcing the Bank's lien against the property. Any payment you choose to make is voluntary and for the purpose of retaining the property. . . .[24]

Just a few days later, on May 22, 2026, Debtors filed in this Court their Motion for Contempt for Violation of Discharge Injunction and for Order Compelling Verified Accounting ("Motion for Contempt").[25] The Motion for Contempt sought a finding of contempt for violation of § 524(a)(2), a verified accounting, compensatory damages, and punitive damages.

After an initial status conference, the parties narrowed their dispute, with Debtors withdrawing their request for an accounting.[26] The Court then set Debtors' Motion for Contempt for evidentiary hearing, limiting the issue to whether a violation of § 524(a)(2) was present, and reserving the issue of damages.[27]

---

[24] *Id.*

[25] Doc. 43.

[26] Doc. 62, Doc. 63, Doc. 66.

[27] Doc. 76 (Hearing Scheduling Order). Debtors' Motion for Contempt also alleged a violation of Fed. R. Bankr. P. 3001(c)(2)(C) based on Equity Bank not providing a Mortgage Proof of Claim Attachment (Form 410-A), an escrow account statement, and an itemization of the prepetition fees and charges to Equity Bank's Proof of Claim, and by failing to list the arrearage figure, leaving the value of the Real Property blank, including an incorrect daily interest rate, and claiming the signatory for the Proof of Claim incorrectly checked the box for "I am the creditor" rather than "I am the creditor's attorney or authorized agent." Debtors' acknowledged Equity Bank was not required to file a Proof of Claim, but argued that since the Bank did file a Proof of Claim, it could not "disclaim the evidentiary consequences of its own sworn filing." Doc. 43 p. 7. Debtors may have abandoned this argument, as they have not raised it in subsequent briefing, but to the extent not abandoned, it is overruled. As Debtors acknowledge, secured creditors are not required to file a proof of claim to protect their security interest. 11 U.S.C. § 506(d); *Kipp Flores Architects, L.L.C. v. Mid-Continent Cas. Co.*, 852 F.3d 405, 411 (5th Cir. 2017) (citing cases). And although the impact of a claim not filed in accordance with Fed. R. Bankr. P. 3001 is a loss of *prima facie* validity under that Rule, *see In re Freeman-Clay*, 578 B.R. 423, 435 (Bankr. W.D. Mo. 2017), Equity Bank has not relied on its Proof of Clam in this matter.

## II. Conclusions of Law

### A. Jurisdiction and Burden of Proof

Under § 105(a), the Court "has the authority to enforce its orders and retains jurisdiction" to sanction conduct that violates § 524.[28] This is a core proceeding, arising under title 11, over which this Court has subject matter jurisdiction.[29] Venue is proper in this District.[30]

Debtors have the burden to prove contempt for a violation of the discharge injunction by clear and convincing evidence.[31]

### B. Discharge Injunction of § 524(a)(2)

Under § 524(a)(2), a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." A violation of the discharge injunction may be sanctioned under the bankruptcy court's equitable power.[32] To be subject to sanctions, the movant must show both that the creditor knew the

---

[28] *Gray v. Nussbeck (In re Gray)*, 573 B.R. 868, 877 (Bankr. D. Kan. 2017).

[29] 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A), and Amended Order of Reference, D. Kan. S.O. 13-1.

[30] 28 U.S.C. § 1409(a).

[31] *Jester v. Wells Fargo Bank N.A. (In re Jester)*, No. EO-15-002, 2015 WL 6389290, at *5 (B.A.P. 10th Cir. Oct. 22, 2015) ("The debtor bears the burden of proving that the creditor willfully violated the discharge injunction by clear and convincing evidence.").

[32] *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1306 (10th Cir. 2008) ("Under 11 U.S.C. § 105(a), bankruptcy courts have the equitable power to enforce and remedy violations of substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in § 524(a)(2).").

discharge injunction was applicable and intended the actions that violated the injunction.[33] A bankruptcy court may "impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order."[34] In other words, "a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct."[35]

In the Tenth Circuit, the standard for assessing discharge injunction violations has long been an objective one. Even if a creditor's action is facially permissible, "a violation of § 524(a)(2) may still be found if the debtor proves 'the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly,' i.e., so as to obtain payment of the discharged debt."[36] A bankruptcy court must ask "whether the creditor's conduct had the practical, concrete effect of coercing payment of a discharged debt, and bad faith is not required."[37] And the Tenth

---

[33] *Otero v. Green Tree Servicing, LLC (In re Otero)*, 498 B.R. 313, 319 (Bankr. D.N.M. 2013) ("[T]he movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." (internal quotations omitted)).

[34] *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019). Regarding intent, the Supreme Court instructed: "This standard is generally an objective one. We have explained before that a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Id.* at 561. "Subjective intent is not irrelevant, and may be informative to bad faith or good faith to determine appropriate sanction." *Id.* at 561-62.

[35] *Id.* at 557.

[36] *In re Paul*, 534 F.3d at 1308 (quoting *Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 19 (1st Cir. 2006)).

[37] *Id.*

Circuit has also said that a "procedural impropriety or error" is insufficient "if the objective effect is not to coerce payment of a discharged debt."[38]

For example, objective coercion was found where a creditor's actions left the debtors with no choice but to reassume a previously discharged loan so the creditor would release a lien and the debtors could dispose of a car, because there was no reason other than coercion for the creditor's actions.[39] But no objective coercion was found where collateral had substantial value and the creditor had a legitimate economic purpose to enforce its *in rem* rights in the collateral.[40]

The important distinction in a motion alleging a violation of the discharge injunction is whether the complained-of action is *in personam,* versus *in rem*. Under § 524(a)(2), "only acts to collect, recover or offset a discharged debt as a personal liability of the debtor are enjoined. In other words, actions taken *in personam* to collect pre-petition debts from a debtor are enjoined. In contrast, actions taken *in rem* to enforce an interest in property are not enjoined."[41]

---

[38] *Id.*

[39] *Id.* at 1308-09 (discussing *In re Pratt*, 462 F.3d at 19-20).

[40] *Id.* at 1309 (discussing *In re Schlichtmann*, 375 B.R. 41, 98 (Bankr. D. Mass. 2007)).

[41] *In re Cotton*, No. BR 22-10735-TBM, 2025 WL 2969271, at *2 (Bankr. D. Colo. Oct. 16, 2025). *See also Jester v. Wells Fargo Bank N.A. (In re Jester)*, No. EO-15-002, 2015 WL 6389290, at *5 (B.A.P. 10th Cir. Oct. 22, 2015) ("The discharge injunction does not constitute a blanket prohibition against all actions undertaken by creditors after the entry of discharge. Actions to collect against the debtor personally are enjoined. In contrast, *in rem* actions, which include actions to enforce a lien against encumbered property, are not prohibited by the discharge injunction."). *See also In re Paul*, 534 F.3d at 1308 ("[A] debtor may establish that a creditor who has taken an action not overtly prohibited by § 524(a)(2) nevertheless violated the discharge injunction, but to do so the debtor must prove not merely that [the creditor's] act is not what it appears to be, but that the act in question is one to collect a discharged debt *in personam*." (internal quotations omitted)).

Here, Debtors did not reaffirm their personal liability on the debt at issue and received a discharge in their Chapter 7 case, which discharged their personal liability on the debt to Equity Bank.[42] But discharging personal liability does not impact Equity Bank's ability to foreclose on the Real Property or enforce its rights against the Real Property—it only impacts Equity Bank's rights to collect or recover the debt as a personal obligation.[43] And the Code permits secured creditors to communicate with debtors to enforce *in rem* rights.[44] As one court noted, "it is not *per se* improper for the secured creditor to contact a debtor to send payment coupons, determine whether payments will be made on the secured debt, or inform

---

[42] *See* 11 U.S.C. § 727(b). *See also Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) ("A mortgage is an interest in real property that secures a creditor's right to repayment. But unless the debtor and creditor have provided otherwise, the creditor ordinarily is not limited to foreclosure on the mortgaged property should the debtor default on his obligation; rather, the creditor may in addition sue to establish the debtor's *in personam* liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally. A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation. However, such a discharge extinguishes only the personal liability of the debtor. . . . [T]he Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." (internal citations and quotations omitted)).

[43] *See, e.g.*, *In re Cantrell*, 605 B.R. 841, 853 (Bankr. W.D. Mich. 2019) ("Debtor's chapter 7 discharge extinguished the Debtor's personal liability for any deficiencies on the prepetition loan obligation, but did not affect the secured creditor's *in rem* interest in the real property or its right to foreclose on the property in the event of a default in payments. In such instances, the discharge injunction in § 524(a)(2) does not prohibit all communications between the secured creditor and the debtor, but only enjoins any actions and communications designed to 'collect, recover or offset' the debt as a 'personal liability of the debtor.'" (quoting § 524(a)(2))).

[44] *See* 11 U.S.C. § 524(j): "Subsection (a)(2) does not operate as an injunction against an act by a creditor that is the holder of a secured claim, if—(1) such creditor retains a security interest in real property that is the principal residence of the debtor; (2) such act is in the ordinary course of business between the creditor and the debtor; and (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien."

the debtor of a possible foreclosure or repossession, as long as it is clear the creditor is not attempting to collect the debt as a personal liability."[45] The question is where to draw the line between a secured creditor's permissible and impermissible post-discharge communications concerning a debt.[46]

When a secured creditor sends communications to a debtor after the discharge of personal liability, the secured creditor must prominently state the limited nature of the communication in order to properly limit it to enforcement of the creditor's *in rem* rights. For example, in a case relied upon by Debtors, *Anaya v. Shellpoint Mortgage Servicing (In re Anaya)*,[47] the court denied summary judgment to a mortgage creditor regarding a debtor who claimed the creditor's letters violated the discharge injunction because those statements included—in addition to disclaimer language—frequent references to an "amount due," statements that the three letters at issue were "an attempt to collect a debt," and the loan was not coded by the mortgage creditor as discharged in bankruptcy.[48] But as to later letters with prominent statements that the letters were being sent for informational and compliance only, were not an attempt to collect the debt, and did not refer to an

---

[45] *In re Culpepper*, 481 B.R. 650, 658 (Bankr. D. Or. 2012) (internal quotations omitted).

[46] *In re Cantrell*, 605 B.R. at 854 ("[T]he line between actions and communications aimed at collecting the debt from a debtor personally and those intended to provide the debtor with relevant information (such as about what payments are required to avoid foreclosure) is an especially fine one. This court agrees with other courts which have held that determination of whether a violation of the discharge injunction has occurred is fact-specific and requires consideration of all of the circumstances of a particular case.").

[47] No. 09-20471, Adv. No. 23-6007, 2024 Bankr. LEXIS 1016 (Bankr. D. Kan. Apr. 22, 2024).

[48] *Id.* at *10-11.

amount due, the bankruptcy court granted summary judgment because the letters therefore had no "practical, concrete effect of coercing payment of the discharged debt."[49]

Likewise, in another case cited by the parties, *Kirby v. 21st Mortgage Corp. (In re Kirby)*,[50] the First Circuit Bankruptcy Appellate Panel analyzed multiple post-discharge communications.[51] In that case, after entry of the Chapter 7 discharge the secured creditor sent twenty-four communications to the debtor or his attorney over a twenty-six-month period and also filed a state court foreclosure.[52] All but one of the nineteen letters were sent with disclaimers that the creditor was not attempting to collect a debt personally and were informational about interest rate changes. Many of these communications were in response to an inquiry from the debtor.[53] For these communications, the appellate court affirmed the bankruptcy court's conclusion that there was no coercive effect and no discharge injunction violation.[54] As to an escrow account disclosure, although the communication contained new payment information and a new payment due date,

---

[49] *Id.* at 11-12.

[50] 599 B.R. 427 (B.A.P. 1st Cir. 2019).

[51] *Id.* at 441 (contrasting "a clear demand for payment of a pre[-]petition debt accompanied by coercion in the form of threatened action or some other consequence for nonpayment, or harassment to induce the debtor to pay" from communications that "include an unambiguous disclaimer that the communication is not an attempt to collect *in personam*, but rather, only an attempt to assert the creditor's *in rem* rights against collateral" (internal quotations omitted)).

[52] *Id* at 443-44.

[53] *Id.* at 444-45.

[54] *Id.* at 445.

the bankruptcy court's conclusion was also affirmed that the creditor did not violate the discharge injunction because it did not indicate it was an attempt to collect a debt, make a demand for payment or threaten adverse consequences, and it contained an unambiguous bankruptcy disclaimer.[55]

Most similar to the situation at hand, the *Kirby* court analyzed a Right to Cure Notice. The Notice informed debtor of the amount of the default, that the debtor "could cure the default by making certain payments, and that [the secured creditor] intended to foreclose on the mortgage if he did not cure the default."[56] The Notice also, however, included "an unambiguous bankruptcy disclaimer."[57] The court affirmed the conclusion that the Notice was a permissible communication by a secured creditor in reference to the enforcement of its rights against a property *in rem*, rather than personally.[58]

Here, Debtors fault each post-discharge communication because they are addressed to Debtors individually. They also fault the first letter because it says the loan is delinquent and "you must pay" the delinquent amount by a date certain, and point out that failure to cure may result in foreclosure. Debtors argue the letters and the Notice of Escrow Deficiency are coercive because they require payment within a short time frame on threat of foreclosure.

---

[55] *Id.* at 446.

[56] *Id.* at 447.

[57] *Id.*

[58] *Id.*

The Court concludes, however, based on its review of the communications, that there was no violation of the discharge injunction. First, although each communication was sent to Debtors individually, that is not an objective basis to conclude the communications were attempts to collect the debt personally. There is nothing in the record indicating it would have been useful or more appropriate to send the letters to anyone other than Debtors. In addition, only the first letter from the law firm and the Notice of Escrow Deficiency from the secured creditor were sent independent of an inquiry from Debtors. Each of the second, third, and fourth letters from the law firm were responding to communications from Debtors. Debtors called the law firm concerning the first letter and then sent their own letters both to the law firm and to Equity Bank disputing the debt and requesting verification. Communications subsequent to the law firm's first letter were all in response to Debtors' communications.

Finally, the Court concludes none of the communications were objectively coercive—each letter, read in whole, is clear that it is being sent to advise of a deficiency necessary to be cured to avoid the creditor proceeding to enforce its *in rem* rights. The disclaimers included on each communication are precise: no collection of personal liability is intended, and the creditor is providing the information as a prerequisite to proceeding with its *in rem* recovery. The Real

Property has significant value, and Equity Bank has a legitimate economic purpose to enforce its *in rem* rights in the collateral.[59]

Debtors have not carried their burden to show Equity Bank's or the law firm's communications coerced or harassed them improperly to obtain payment of a discharged debt.[60] Both the law firm's and the secured creditor's actions were "lawful under the discharge order"[61] and no violation was shown.

## III. Conclusion

The record shows there was an objectively reasonable basis for concluding the law firm's and bank's conduct was lawful under the discharge order. Not only was the conduct facially permissible, but there was no persuasive evidence presented that, viewed objectively, showed the conduct had the practical, concrete effect of coercing payment of a discharged debt or harassing Debtors. Debtors' Motion for Contempt[62] is denied.

**It is so ordered.**

# # #

---

[59] A foreclosure action seeking *in rem* relief does not violate the discharge injunction. *See Jester v. Wells Fargo Bank N.A. (In re Jester)*, No. EO-15-002, 2015 WL 6389290, at *7 (B.A.P. 10th Cir. Oct. 22, 2015) ("Because the discharge injunction does not preclude in rem actions by secured creditors, the bankruptcy court correctly concluded that commencing the 2012 Foreclosure Action and obtaining the Foreclosure Judgment did not constitute violations of the discharge injunction.").

[60] *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1308 (10th Cir. 2008) (stating the debtor has the burden to prove "'the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly,' i.e., so as to obtain payment of the discharged debt" quoting *Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 19 (1st Cir. 2006)).

[61] *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019).

[62] Doc. 43.